## Baer v. Fetrow

*Andrea C. Jacobsen,* for plaintiffs.
*Bradley L. Griffie,* for defendant.

BAYLEY, *J.,* February 27, 1987 — On March 10, 1986, plaintiffs entered into an oral month-to-month lease with defendant for a residential property in Boiling Springs, Cumberland County. They escrowed a $300 security deposit with defendant on the same date. On May 18, 1986 plaintiffs notified defendant of their intention to surrender the leasehold premises on May 20, 1986, which in fact they did.

Following their vacation of the premises Bonnie Baer demanded the return of the $300 security deposit and provided an address in writing to defendant where she could be reached. That deposit has never been returned nor has defendant ever pro-

vided plaintiffs with a written list within 30 days of their vacating the premises of any damages to the leased premises for which the landlord claims that the tenants are liable. Plaintiffs have instituted this suit for the return of the $300 security deposit together with a $300 penalty pursuant to the Landlord and Tenant Act of 1951, April 6, 1951, P.L. 69, Art. V, §512, as amended, 68 P.S. §250.512, which provides as follows:

"Recovery of improperly held escrow funds

(a) Every landlord shall within 30 days of termination of a lease or upon surrender and acceptance of the leasehold premises, whichever first occurs, provide a tenant with a written list of any damages to the leasehold premises for which the landlord claims the tenant is liable. Delivery of the list shall be accompanied by payment of the difference between any sum deposited in escrow, including any unpaid interest thereon, for the payment of damages to the leasehold premises and the actual amount of damages to the leasehold premises caused by the tenant. Nothing in this section shall preclude the landlord from refusing to return the escrow fund, including any unpaid interest thereon, for nonpayment of rent or for the breach of any other condition in the lease by the tenant.

(b) Any landlord who fails to provide a written list within 30 days as required in subsection (a) above, shall forfeit all rights to withhold any portion of sums held in escrow, including any unpaid interest thereon, or to bring suit against the tenant for damages to the leasehold premises.

(c) If the landlord fais to pay the tenant the difference between the sum deposited, including any unpaid interest thereon, and the actual damages to the leasehold premises caused by the tenant within 30 days after termination of the lease or surrender

and acceptance of the leasehold premises, the landlord shall be liable in assumpsit to double the amount by which the sum deposited in escrow, including any unpaid interest thereon, exceeds the actual damages to the leasehold premises caused by the tenant as determined by any court of record or court not of record having jurisdiction in civil actions at law. The burden of proof of actual damages caused by the tenant to the leasehold premises shall be on the landlord.

(d) Any attempted waiver of this section by a tenant by contract or otherwise shall be void and unenforceable.

(e) Failure of the tenant to provide the landlord with his new address in writing upon termination of the lease or upon surrender and acceptance of the leasehold premises shall relieve the landlord from any liability under this section.

(f) This section shall apply only to residential leaseholds and not to commercial leaseholds."

Defendant has admitted the aforesaid facts in his answer to plaintiffs' amended complaint. In addition, defendant has averred that he "[d]id provide plaintiff Bonnie Baer with a statement indicating that there was dramatic damage to the premises and that as soon as he was able to secure either estimates or ultimate billings for the damages, he would so advise plaintiff" and that "[i]t was doubtful that any of their $300 security deposit would be returned due to the dramatic damages involved."[1]

Plaintiffs have moved for a judgment on the pleadings pursuant to Pa.R.C.P. 1034, which provides:

---

[1]: Defendant has not averred the nonpayment of any rent or the breach of any other condition of the lease by the tenants.

"(a) After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings.

(b) The court shall enter such judgment or order as shall be proper on the pleadings."

In Bata v. Central Penn National Bank of Philadelphia, 423 Pa. 373, 224 A.2d 174 (1966), the Supreme Court noted:

"Under Pa.R.C.P. 1034, a motion for judgment on the pleadings may be granted in cases which are so free from doubt that a trial would clearly be a fruitless exercise. Such a motion is in the nature of a demurrer; all of the opposing party's well-pleaded allegations are viewed as true but only those facts specifically admitted by him may be considered against him. Bureau of Child Care v. United Fund of Philadelphia, 416 Pa. 617, 207 A.2d 847 (1965); Poole v. Great American Ins. Co., 407 Pa. 652, 182 A.2d 509 (1962). Unlike a motion for summary judgment, the power of the court to enter a judgment on the pleadings is further circumscribed by the requirement that the court consider only the pleadings themselves and any documents properly attached thereto. Nederostek v. Endicott-Johnson, 415 Pa. 136, 138, 202 A.2d 72, 73 (1964); Emery v. Metzner, 191 Pa. Super. 440, 445, 156 A.2d 627, 630 (1959).[2]

Plaintiffs maintain that the entry of the judgment on the pleadings is warranted because the defendant has admitted that he has not return any portion of the security deposit, or provided them with a written list of any damages to the subject premises, which failure triggers section 512 of the Landlord

2. See also Eckborg v. Hyde-Murphy Company, 422 Pa. 283, 220 A.2d 837 (1971); Necho Coal Company v. Denise Coal Company, 387 Pa. 567, 128 A.2d 771 (1959).

and Tenant Act which is aimed at the wrongful withholding of a security deposit. While the facts of the case is not on point, Judge Wettick of the Allegheny Court of Common Pleas in Bonifield v. Cassler, 16 D. & C.3d 716 (1980), has analyzed the purposes of section 512 and construed each of its subsections in a manner consistent with the purpose of the legislature. The court noted:

"Security deposits are also dealt with in section 511 (a)-(c) of The Landlord and Tenant Act, 68 P.S. §550.511(a)-(c), which bars a landlord from requiring security deposits in excess of two months' rent for the first year and one month's rent for the second and each subsequent year, which provides for interest payments on the security deposit, and which requires the security deposit to be placed in an escrow account unless the landlord has guaranteed return through a surety bond. Section 511(a)-(c) and section 512 constitute a legislative scheme that is designed to limit the amount of a security deposit which a landlord may require and to protect a tenant's right to the return of the security deposit. Under subsection (a) of §512, a landlord is still entitled to retain the security deposit for the breach of any condition in the lease. But the additional protection afforded the tenant by this subsection is his or her right to receive within 30 days a written list of the damages claimed together with the difference between the security deposit and the damages claimed. Subsection (b) provides the remedy for noncompliance with subsection (a)—the forfeiture of rights of the landlord who keeps the escrow funds without meeting the notice requirements. And subsection (c) provides the sanctions essential to ensure compliance with subsection (a) — double damages for the landlord who sues a tenant who has kept the escrow fund without providing notice.

(Subsection (c) also furthers the legislative scheme of protecting the tenant's right to have the security deposit returned by providing double damages to the tenant against a landlord who wrongfully withheld the security deposit by claiming damages that were not incurred.)

Under this legislative scheme landlords are divided into two categories: those who provide written notice within 30 days of the claims for which they are retaining the security deposit and those who do not do so. Under subsection (b) the landlord who fails to provide such notice forfeits all rights to withhold any portion of the security deposit "or" to bring a suit against the tenant for damages to the leasehold premises.[3] Because the landlord has forfeited his or her rights to withhold any portion of the security deposit, he may be sued for double the amount

---

3. The word "or" should be read as "and" when it is plainly intended to be conjunctive rather than disjunctive. A construction which gives "or" its ordinary meaning should not be used if this would give a result that is absurd, impossible of execution, highly unreasonable, or tending to nullify legislative intent: Bertera's Hopewell Foodland Inc. v. Masters, 428 Pa. 20, 36-37, 236 A.2d 197 (1967); Com. v. Belcher, 233 Pa. Super. 212, 217, 335 A.2d 505, 507 (1975). In subsection (b), the legislature plainly intended the word "or" to be read as "and" because it would be unreasonable and nullify the legislative intent to give a landlord who fails to provide the written list within 30 days a choice of either forfeiting his right to retain the security deposit or forfeiting his right to bring a suit against the tenant for damages to the leasehold premises. Landlords seldom sue tenants for damages to the premises once the tenants have left the premises. The problem which this legislation is designed to correct is the landlord's wrongful retention of the security deposit. The major protection of this legislation is the notice requirement and only by construing subsection (b) to provide for a forfeiture of the right to withhold the security deposit if notice is not given do we give any real meaning to the remedy provisions of section 512.

of the security deposit under subsection (c). Furthermore, subsection (b's) forfeiture will bar him from defeating the suit on the grounds that the tenant has caused damages to the premises.[4]

The second category of landlords — those who provide the written list accompanied by payment of the difference between the amount of the security deposit and the damage claim — are not subject to subsection (b) and the only effect of subsection (c) is that if such landlords have withheld funds in excess of the actual damages, they will be liable for double that amount.

In the present case the landlord has admitted that he withheld the security deposit without providing the required written notice to plaintiffs; i.e., he wrongfully withheld the security deposit. It is this wrongful withholding of the security deposit which the statute is aimed at prohibiting by imposing a severe penalty; double the return of the security deposit. The fact that plaintiffs may have damaged the property and were advised that they would ultimately receive notification of the amount of damages, does not bring defendant into compliance with the act no matter how equitable his position may be. Defendant suggests that his pleadings sufficiently raise an issue regarding an understanding or agreement that the parties may have had after plaintiffs removed themselves from the premises. Even if

---

4. If we were to construe subsection (c) to permit this landlord who retains a security deposit without providing a written list to the tenant to defeat a claim for the return of the security deposit by showing actual damages to the leasehold premises, we would be giving no effect to the forfeiture provisions of subsection (b) and in addition would remove any incentive for the landlord to provide written notice (i.e., the landlord who fails to provide written notice would be no worse off than the landlord who does so) . . .

there was a separate understanding or agreement it would not provide a defense for the wrongful withholding of the security deposit under section 512. Subsection (d) specifically provides that "[A]ny attempted waiver of this section by a tenant by contract or otherwise shall be void and unenforceable." Accordingly, this case is free from doubt and there are no issues of fact to be decided at a trial.[5] Therefore, the following order is entered.

## ORDER OF COURT

And now, this February 27, 1987, it is ordered that: 1. Plaintiffs' motion for a judgment on the pleadings, is granted; 2. Judgment is entered in favor of plaintiffs and against defendant in the amount of $600 with interest thereon from June 1, 1986, and court costs.

---

5. Plaintiffs' additional claim for attorney's fees .is not supported by any legal authority.